UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  Plaintiff,<br><br>  v.<br><br>CAROL TERRELL,<br><br>  Defendant. | CASE NO. 2:22-cr-127<br><br>JUDGE WATSON<br><br>GOVERNMENT'S SENTENCING MEMORANDUM |

The United States of America, by and through its undersigned counsel, respectfully submits this memorandum for the sentencing of Defendant Carol Terrell ("Defendant" or "Terrell"). For the reasons set forth herein, the United States recommends that Defendant be sentenced to a term of imprisonment followed by a three-year term of supervised release, ordered to pay $331,277.21 in restitution, and a $100 mandatory special assessment.

   I.   **Factual Background**

From 2013 through at least 2017, Defendant intentionally and knowingly defrauded the United States by providing nonconforming parts to the military after making false representations that they were the proper parts. As sole owner and operator of her company, MMPEDistributors, Defendant quoted code and part contracts that were posted by the Defense Logistics Agency ("DLA"). Each of these contracts required that Defendant provide a specific part that was manufactured by an approved source. Although Defendant represented that she would provide the exact part, she provided aftermarket or replacement parts from an unapproved source. When DLA inquired as to the traceability of the parts, Defendant provided false documentation. Moreover, Defendant used packaging that contained markings indicating that the parts were in fact the exact

parts as requested. Relying on Defendant's representations, the Department of Defense ("DOD") wire transferred payment to MMPEDistributors. All said and done, the DOD suffered a loss of $331,277.21 after it relied on Defendant's certifications that she was providing the proper parts for 49 purchase orders.

Defendant was first introduced to this scheme by D.H. The two were engaged in a relationship from approximately 2013 through 2016. D.H. taught Defendant how to conduct fraudulent business with the DOD and instructed Defendant on which contracts to quote and how to fraudulently fulfill contracts. When Defendant was in a relationship with D.H., only Defendant's name was affiliated with MMPEDistributors, and all payments were wired to Defendant's bank account. Defendant would then provide D.H. with a portion of these proceeds. Although Defendant's relationship with D.H. ended in or around 2016, Defendant continued to defraud the United States through this scheme.

The DLA Product Test Center tested the parts Defendant provided from 16 purchase orders spanning from approximately May 2016 through June 2017. For each of these orders, Defendant certified that she would provide the exact part as required and that the part was not used, reconditioned, remanufactured, or new or unused government surplus. Defendant was awarded each purchase order because she had certified that the parts were the exact parts required. Moreover, Defendant knew that MMPEDistributors would only be awarded the purchase order if she concealed the fraudulent origin of the parts. So that is exactly what she did. Defendant provided the parts in packaging that indicated they were the required parts and presented DLA with false documents and information. Upon product testing, DLA confirmed that Defendant provided nonconforming parts for each of these 16 purchase orders.

Three particular instances highlight the types of contracts Defendant fraudulently provided to the DOD. On July 1, 2016, MMPEDistributors was awarded a purchase order from DLA Land & Maritime to provide 708 valve disk retainers for $2,747.04. (Purchase Order SPE7L2-16-V-2227). These parts are critical application items used for mine resistant ambush protected vehicles. Defendant not only certified that she would provide the exact parts when she submitted her quote for the purchase order, but she also provided an invoice to DLA purporting to show that the parts were produced by the approved manufacturer. However, DLA testing confirmed that the parts provided by Defendant were of unknown origin and unacceptable for use. A search of Defendant's home revealed that she had provided false documentation to DLA and that the parts were purchased from an unapproved supplier.

Defendant followed this same fraudulent scheme to solicit a purchase order from DLA Troop Support to provide gasket and seal sets—items used in support of heavy expanded mobility tactical trucks. (Purchase Order SPE5EJ-16-M-1498). On July 7, 2016, Defendant was awarded this purchase order in the amount of $72,075. Again, Defendant provided a false quotation and invoice; as confirmed by DLA testing, the parts she provided were from an unapproved source and unacceptable for use.

Similarly, on April 17, 2017, Defendant was awarded a purchase order to provide six-cylinder assemblies—a part used in connection with wheeled scraper tractors—by DLA Land & Maritime in the amount of $23,850. Following the pattern described above, Defendant certified in her quotation that she would provide the exact parts by the approved source. In an attempt to conceal the origin and specifications of the parts, Defendant provided false documents purporting

to show that the parts provided were the exact parts. DLA testing confirmed that the parts provided by Defendant were of unknown origin and unacceptable for use.

In addition to the 16 purchase orders that were tested by DLA, a search of Defendant's residence indicates that she supplied nonconforming parts in connection to an additional 33 purchase orders. Like the purchase orders explained above, each of these 33 orders were "code and part" purchase orders that required Defendant to provide the exact part. In total, Defendant – once working on her own – defrauded the DOD of $331,277.21.

**II.  Procedural History**

On July 13, 2022, the United States Attorney for the Southern District of Ohio filed a one count Information charging Carol Terrell as the sole defendant. (Doc. #2). Count 1 charged Terrell with Wire Fraud, in violation of 18 U.S.C. § 1343. On August 3, 2022, Defendant entered a plea of guilty to Count 1, pursuant to a Rule 11(c)(1)(A) Plea Agreement. (Doc. #3).

**III.  Sentencing Guidelines Calculation**

   a.  <u>Statutory Maximum Sentence</u>

The maximum sentence for wire fraud is twenty years imprisonment, three years supervised release, a fine of twice the gross gain or loss or $250,000, whichever is greater, and a $100 special assessment.

   b.  <u>Sentencing Guidelines Calculation</u>

In imposing a sentence, the Court must take into account the considerations of sentencing set forth in 18 U.S.C. § 3553(a). *United States v. Booker*, 543 U.S. 220, 261 (2005). First, as stated in Section 3553(a)(4), the Court must determine and consider the sentencing range established by the United States Sentencing Guidelines ("Guidelines" or "U.S.S.G."). As the Presentence

Investigation Report ("PSR") correctly calculates, the combined adjusted offense level is **18**. This offense level accounts for a 3-level reduction for Defendant's acceptance of responsibility and timely notification of her intention to enter a plea of guilty. Neither Defendant nor the United States opposed the sentencing guidelines as set forth in the Plea Agreement and PSR. Defendant falls within Criminal History Category I. Therefore, Defendant's Guidelines range spans from 27-33 months of imprisonment, before any departures or variances are considered.

IV.     **The Proper Sentence**

Once the Court has properly calculated the guideline range, the Court must next consider all the sentencing considerations set forth in Section 3553(a). Those factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant; (4) the need to provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner; (5) the guidelines and policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a).

a. <u>The Nature and Circumstances of the Offense</u>

This is a serious offense. From in or about 2013 through in or about 2017, Defendant knowingly and intentionally supplied nonconforming parts to fulfill DOD purchase orders for exact military parts used on submarines, vessels, and land vehicles. Defendant knew that her company, MMPEDistributors, would not have been awarded these orders if she did not

misrepresent the origin and specifications of the parts that she provided. To secure the purchase orders, Defendant fraudulently certified that she would provide the exact part, had the nonconforming parts packaged with markings identifying them as the proper parts, and electronically invoiced the DOD for payment representing that the parts met the exact specifications. Put another way, Defendant misrepresented the nature of the parts that she provided on multiple occasions for each purchase order. A single fraudulently obtained and fulfilled purchase order would qualify as a serious offense, but this was not an isolated incident of fraud. Rather, Defendant employed this scheme to provide nonconforming parts in 49 distinct purchase orders.

This was far from a victimless offense. Defendant's repeated scheme not only defrauded the United States government out of $331,277.21[1] but also jeopardized members of the American military and their mission. The seriousness of Defendant's fraud is compounded by the fact that she provided several nonconforming critical application items. When critical application items do not conform with specifications, they can cause injury, death, or the failure of important government infrastructure. Consider one such purchase order as an alarming example. Defendant entered into a purchase order and provided the United States with 708 valve disk retainers—a critical application item for mine resistant ambush protected vehicles. The safety concerns related to a mine resistant vehicle being built with improper parts goes without saying. By intentionally misrepresenting the source and specifications of these parts, Defendant placed ill-gotten profit over the military's security and effectiveness. Similarly, Defendant misrepresented parts used for other vehicles, such as heavy expanded mobility tactical trucks and wheeled scraper tractors.

---

[1] The total loss to the DOD for all 49 purchase orders was $325,288.25. The testing costs for these nonconforming parts amounted to $5,988.96.

The seriousness of Defendant's offense is not diminished by D.H.'s participation. Although Defendant was first introduced to this fraudulent scheme by D.H. in 2013, Defendant's fraudulent behavior persisted well after her relationship with D.H. ended in 2016. Defendant defrauded the United States through each of the 49 purchase orders after her relationship had ended with D.H. For all these reasons, a corresponding term of imprisonment is necessary to reflect the seriousness of the offenses, promote respect for the law, and provide just punishment. 18 U.S.C. § 3553(a)(2)(A).

    b. <u>The History and Characteristics of the Defendant</u>

On the one hand, there are mitigating circumstances in this case. Namely, Defendant does not have a criminal history and Defendant reports to be the sole caretaker for her 17-year-old teenage daughter. In terms of her own upbringing, Defendant described having a "good childhood" and explained that her basic needs were provided for as a child. (PSR ¶ 47). As an adult, she suffers from several significant medical conditions. (PSR ¶ 56). Still, Defendant's employment record demonstrates that she is clearly capable of legitimate employment and evidences a desire to help others. (PSR ¶¶ 62-69). Defendant's circumstances, however, should be tempered against the backdrop of the current case. Defendant engaged in a yearslong scheme to defraud the DOD. Some term of imprisonment would account for Defendant's history and characteristics while still giving proper weight to the seriousness of the offense.

    c. <u>The Need to Afford Adequate Deterrence to Criminal Conduct</u>

The Government's recommended sentence will also serve the twin goals of specific and general deterrence. Defendant repeated her fraudulent scheme with 49 different purchase orders. Thus, this was not a momentary lapse in judgment but a repeated pattern. The idea that Defendant

7

did not know she was defrauding the United States by certifying the order and supplying false documents, *see* PSR ¶ 22, is unequivocally refuted by her plea agreement. Moreover, although Defendant learned how to defraud the DOD from D.H., Defendant did not stop engaging in this fraud when her relationship with D.H. ended. Each purchase order offered a choice for Defendant: defraud the United States or play by the rules.

The Government's requested sentence will also serve general deterrence. A term of imprisonment—paired with restitution—sends a clear message to others considering defrauding the government: the criminal justice system takes fraud seriously. An especially strong message is warranted when the fraud, like in this case, involves nonconforming critical application items that threaten the effectiveness of the United States military and jeopardize the safety of those serving to protect this country.

d. Restitution

Pursuant to 18 U.S.C. § 3663A and the parties' Plea Agreement, restitution in the amount of $331,277.21 shall be ordered.

## V. Conclusion

For the forgoing reasons, the United States respectfully requests that the Court sentence Defendant Carol Terrell to a total term of imprisonment, followed by a three-year term of supervised release, restitution, and a $100 mandatory special assessment. This sentence is sufficient, but not greater than necessary, to effectuate the purposes of 18 U.S.C. § 3553(a).

Respectfully submitted,

KENNETH L. PARKER
United States Attorney

*s/Jessica W. Knight*
JESSICA W. KNIGHT (0086615)
Assistant United States Attorney
303 Marconi Boulevard, Suite 200
Columbus, Ohio 43215
Phone: (614) 469-5715

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Government's Sentencing Memorandum was served this 9th day of February 2023, electronically on all counsel of record.

*s/Jessica W. Knight*
JESSICA W. KNIGHT (0086615)
Assistant United States Attorney